UNITED STATES DISTRICT COURT
WESTCHESTER COUNTY
---------------------------------------------------------X
YOSELIT ARAUCO,

                       Plaintiff,

   -against-

THE STOP & SHOP SUPERMARKET
COMPANY LLC, STOP & SHOP, LLC,
and DUANE LYNCH, individually.

                   Defendants.
---------------------------------------------------------X

Case Number:

**COMPLAINT**

Plaintiff Demands a Trial by Jury

Plaintiff, YOSELIT ARAUCO (hereinafter referred to as "Plaintiff" or "ARAUCO"), by and through her attorneys, DEREK SMITH LAW GROUP PLLC, hereby complains of Defendants THE STOP & SHOP SUPERMARKET COMPANY LLC, STOP & SHOP LLC (hereinafter referred to as "STOP AND SHOP", and DUANE LYNCH, individually and/or "Defendants") upon information and belief, as follows:

## NATURE OF CASE

1. This action is brought to remedy, *inter alia*, the unlawful sexual harassment, gender discrimination, racial discrimination, national origin discrimination, hostile work environment, assault and battery, sexual assault and wrongful termination to which Defendants subjected Plaintiff on the basis of her sex/gender with respect to the conditions and privileges of her employment, along with the hostile work environment, retaliation that Plaintiff faced as a result of her opposition to these unlawful practices, and her wrongful termination at the hands of Defendants as a result of his opposition to these unlawful practices. Through their unlawful

and discriminatory conduct, Defendants violated, *inter alia*, Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL").

2. Plaintiff seeks injunctive and declaratory relief with respect to each Claim, as well as, monetary relief, including but not limited to: compensatory and punitive damages; attorney's fees and the costs associated with this action; together with any and all other appropriate legal and equitable relief pursuant to applicable state and federal laws.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction based on 28 U.S.C. § 1331 and supplemental jurisdiction over the state and city law claims under 28 U.S.C. § 1367.

4.    Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

5.    Additionally, the Court has supplemental jurisdiction under the State laws.

6.    Around April 30, 2019, Plaintiff submitted a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). The Federal Charge Number is 520-2019-03415.

7.    The Complaint initiating this matter was filed before the expiration of the deadline stated in the Notice of Right To Sue letter issued by the EEOC.  Therefore, all administrative remedies have been exhausted and Title VII statutory prerequisites have been satisfied.

8.    Venue is proper in those acts or omissions giving rise to the claims arose within the Southern District of New York and the Plaintiff's claims arise out of Defendant STOP AND SHOP's business dealing at one of their store locations in Westchester County, New York.

## PARTIES

9.  At all times material, Plaintiff YOSELIT ARAUCO ("Plaintiff" or ARAUCO") was and is an individual female residing in the State of New York, County of Westchester.

10. At all times material, Plaintiff is of Peruvian national origin.

11. At all times material, THE STOP AND SHOP SUPERMARKET COMPANY LLC ("Defendants") was and is a limited liability company operating in the state of New York.

12. At all times material, THE STOP & SHOP LLC ("Defendants") was and is a corporate entity a domestic limited liability company operating in the state of New York.

13. At all times material, Defendants were Plaintiff's employer.

14. In or around October of 2016, Plaintiff was hired by Defendants to work in the meat department of the Stop & Shop supermarket located at 25 Waterfront Place, Port Chester, NY 10573.

15. At all times material, Defendant Duane Lynch ("LYNCH") was employed by Defendants and was Plaintiff's direct supervisor, with direct supervisory authority over Plaintiff regarding her employment which included but was not limited to the ability to hire and fire Plaintiff, along with other tangible employment actions.

## MATERIAL FACTS

16. In or around December of 2016, LYNCH began to treat Plaintiff well and give her plenty of hours on the schedule.

17. It was at this time that LYNCH began sexually harassing Plaintiff. LYNCH told Plaintiff that he always gave more hours to the pretty females and that she was one of them.

18. LYNCH would constantly tell Plaintiff she was pretty and on one occasion asked her "**WHY DON'T YOU LIKE 'GRINGOS'?**"

19. Plaintiff rebuffed LYNCH's advances and made it clear that she is a married woman with 2 children and that she was not interested in beginning any kind of intimate relationship with him.

20. LYNCH told Plaintiff that he never got rejected by beautiful woman, and much less, by a Hispanic, like her.

21. In or around February of 2017 LYNCH began to request hugs from Plaintiff on a regular basis.

22. When Plaintiff would refuse to hug LYNCH, he would become noticeably angry and begin to reprimand Plaintiff for the most insignificant of infractions, berating her and assigning her more work.

23. On one occasion, in an effort to avoid angering LYNCH's, Plaintiff allowed LYNCH to hug her.

24. During the hug, LYNCH pressed his erect penis against Plaintiff's stomach, Plaintiff walked away, mortified, shocked and embarrassed.

25. Plaintiff went to the manager's office to complain about LYNCH's conduct to a manager, Ana (last name unknown).

26. Plaintiff broke down crying while telling Ana about LYNCH's behavior and how it made her feel degraded, humiliated and depressed.

27. Instead of handling it quietly, Ana told LYNCH about the conversation.

28. The next time LYNCH saw Plaintiff, he berated her, screaming at her and saying that she was hallucinating, and that she was a dumb Hispanic and no one would believe what she says because she does not speak English.

29. Soon after, LYNCH began to cut Plaintiff's hours.

30. After about 3 weeks, LYNCH resumed his harassing behavior, again flirting and asking for hugs.

31. Plaintiff endured the unwanted sexual advances because she was afraid of losing her income and because nothing came of her previous complaint.

32. In or around November of 2017, Defendants hired Manuel (last name unknown) to work in the meat department.

33. After seeing Manuel joking and laughing with Plaintiff, LYNCH became jealous and began spreading rumors about Manuel.

34. LYNCH told Plaintiff in private that if she submitted a false complaint about Manuel that LYNCH would make her head of the seafood department.

35. LYNCH also instructed other employees to go to the office and falsely complain about Manuel.

36. Soon after, Plaintiff learned Manuel was terminated and that day LYNCH gave her a key card and PIN number for the punch in clock so that she could work extra hours and punch herself out (without which a manager override was needed).

37. Immediately after Manuel was terminated, LYNCH began to intensify his harassing behavior.

38. By way of example, on Mondays, LYNCH would get undressed in the meat department area and, wearing nothing but his underwear, would ask Plaintiff what days and how many days she wanted to work. During these weekly interactions LYNCH would get behind Plaintiff and rub his erect penis against her buttocks.

39. Moreover, LYNCH would also rub against Plaintiff's backside whenever he walked by her.

40. LYNCH routinely told Plaintiff that his penis was big and tell her "**GIVE ME A KISS**."

41. On several occasions, LYNCH called Plaintiff to his office and told her to sit on his lap. Plaintiff would refuse and walk away.

42. LYNCH would drive to Dunkin Donuts to bring back coffee and donuts for the employees. He would often demand that Plaintiff come along with him and she complied out of fear of losing her job.

43. During these trips LYNCH would rub Plaintiff's thighs and talk negatively about her husband.

44. Upon returning to work, Plaintiff would cry and even though she felt broken emotionally she did not complain because of fear that she would have her hours cut again.

45. Defendants' employee Graciela (last name unknown), who was the head of the seafood department and witness to much of LYNCH's behavior told Plaintiff to be careful because she was afraid LYNCH might one day sexually assault and/or rape Plaintiff.

46. Plaintiff called a Union Representative to see about a transfer to another location. She was told the Union would not be able to help.

47. Again, Plaintiff felt as though no one could help her. Defendant and the Union informed Plaintiff that there were no other open locations available for a transfer.

48. LYNCH learned of the call to the Union and laughed at Plaintiff, calling her stupid and telling her no one would listen to her because he was the boss.

49. In or around July of 2018, despite having reported the harassment on multiple occasions to no avail, Plaintiff again confided in a store manager, Eileen (last name unknown), and detailed the ongoing sexual harassment LYNCH was perpetrating against her.

50. No remedial or corrective action was taken in response to Plaintiff's complaint to the manager.

51. After Plaintiff confided in Eileen about the harassment and how it was affecting her personally and professionally, LYNCH confronted Plaintiff again.

52. LYNCH again berated Plaintiff, telling her to call the police if she wanted to because no one would believe her because she did not speak English.

53. After this encounter, LYNCH became even more brazen. LYNCH often grabbed his penis through his pants and would tell her it was big in front of numerous other store employees.

54. In or around January of 2019, 6 months after Plaintiff's second complaint to management, Eileen forwarded Plaintiff's Complaint to Human Resources after Plaintiff complained to Eileen again.

55. Plaintiff was described the harassment in detail to Human Resources.

56. After meeting with Human Resources, Plaintiff was scared, depressed and unable to sleep to the point of insomnia. As a result, Plaintiff called out of work for two days.

57. Upon returning to work, Plaintiff requested time off to cope with the mental distress caused by LYNCH's sexual harassment, and Defendant's failure to do anything about it.

58. Plaintiff asked for vacation and sick time that she had already accrued.

59. Eileen informed Plaintiff that the store manager did not want her to use her days and wanted her to work.

60. On or about January 15, 2019, Defendants constructively terminated Plaintiff by not allowing her the personal time needed for her mental health.

61. Defendants discriminated against Plaintiff because of her sex/gender, and because she complained of and opposed the unlawful conduct of Defendant related to the above protected classes.

62. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized,

embarrassed, and emotionally distressed.

63. As a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments including depression, anxiety, sleeplessness, headaches, hair loss and hypertension.

64. As a result of Defendant's unlawful and discriminatory actions, Plaintiff has endured irreparable damage to her professional reputation.

65. As a result of the acts and conduct complained of herein, Plaintiff will suffer the loss of income, the loss of a salary, loss of commissions, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

66. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendant.

67. The above are just some of the examples of unlawful, discriminatory, and retaliatory conduct to which Defendant subjected Plaintiff.

68. Plaintiff claims alternatively (in the event Defendant Claims so or that an agency or Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

69. The Defendants' conduct constitutes a continuing violation. Plaintiff claims a continuous practice of discrimination and claims a continuing violation. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### TITLE VII
### <u>(NOT AGAINST INDIVIDUAL DEFENDANTS)</u>

70.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . ."

72.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.,* by subjecting Plaintiff to discrimination on the basis of her sex/gender, together with causing a hostile work environment based on the same.

73.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER
### TITLE VII
### <u>(NOT AGAINST INDIVIDUAL DEFENDANTS)</u>

74.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

75.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his/her employees . . . because [s]he has opposed any practice made an unlawful employment

practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

76.     Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.,* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

77.     Defendant STOP AND SHOP violated the above and Plaintiff suffered numerous damages as a result.


## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE LAW (AGAINST ALL DEFENDANTS)

78. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79.     New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

80.     Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, together with sexual harassment, sexual assault and causing a hostile work environment.

81.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER
## NEW YORK STATE LAW
## (AGAINST ALL DEFENDANTS)

82. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this

complaint as if fully set forth at length.

83. New York State Executive Law §296(6) further provides that "It shall be an unlawful

discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the

acts forbidden under this article, or to attempt to do so."

84. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling

and/or coercing the discriminatory behavior as stated herein.

## AS A FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW
## (AGAINST ALL DEFENDANTS)

85.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

86.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory

practice: "For any person engaged in any activity to which this section applies to retaliate or

discriminate against any person because [s]he has opposed any practices forbidden under this

article."

87.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs

of New York State Executive Law Section 296.

## AS A SIXTH CAUSE OF ACTION FOR
## ASSAULT AND BATTERY
## <u>(AGAINST ALL DEFENDANTS)</u>

88.     Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89.     That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendants, their agents, servants and/or employees, suddenly and without provocation did physically assault and batter Plaintiff herein.

90.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE** As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

### <u>JURY DEMAND</u>

Plaintiff demands a jury trial on all issues to be tried.

Dated: August 8, 2021
New York, New York

        DEREK SMITH LAW GROUP, PLLC
        Attorneys for Plaintiff

        By: /s/ Seamus Barrett
        Seamus Barrett, Esq.
        One Penn Plaza, Suite 4905
        New York, New York 10119
        (212) 587-0760